UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ZACK TADLOCK                                                                                    PLAINTIFF

V.                              CASE NO. 5:23-CV-5053

HEK, LLC, d/b/a
Kinneberg Management Group, LLC                                                DEFENDANT

## MEMORANDUM OPINION AND ORDER

Now before the Court is Defendant HEK, LLC, d/b/a Kinneberg Management Group's ("KMG") Motion to Dismiss, or in the alternative, Motion to Stay Proceedings (Doc. 11). Along with the Motion, KMG filed a Brief in Support (Doc. 12) and various exhibits (Doc. 13). Plaintiff Zack Tadlock filed a Response in Opposition to the Motion (Doc. 17), and the matter is now ripe for decision. For the reasons explained below, the Motion is **DENIED**.

### I.   BACKGROUND

Defendant KMG is a Minnesota limited liability company that operates as a manufacturer's sales representative. Plaintiff Tadlock was KMG's Vice President for Sales who worked out of the company's office in Bentonville, Arkansas. When Mr. Tadlock first became employed by KMG in September 2020, he signed a confidentiality and non-solicitation agreement. See Doc. 3, pp. 8–11. Approximately two years later, in November 2022, Mr. Tadlock resigned from KMG and went to work for a competitor named Dark Horse Retail Group. At least one of KMG's clients, Lindy's Homemade, LLC, terminated its relationship with KMG and began working with Mr. Tadlock at Dark Horse.

1

KMG was surprised that Mr. Tadlock went to work for a competitor and believed he tortiously interfered with KMG's business relationship with its customer, Lindy's Homemade. KMG also believed that Mr. Tadlock violated the confidentiality and non-solicitation agreement he signed when he first joined the company. As a result, on January 20, 2023, KMG's attorney sent Mr. Tadlock and his new employer, Dark Horse, a letter that stated the following:

> KMG hereby places you on notice of KMG's intent to enforce its contractual, statutory and common law rights to the fullest extent permissible under the law against Mr. Tadlock and/or Dark Horse Retail Group, if necessary. Should Dark Horse Retail Group participate in, support, assist, condone, or permit Mr. Tadlock to continue to violate KMG's rights, KMG will pursue claims against Dark Horse Retail Group for tortious interference with contractual relations, tortious interference with actual or prospective business relations, unfair competition, and all other appropriate statutory and common law claims.

(Doc. 13, p. 18). The letter advised Mr. Tadlock and Dark Horse that the only way they could avoid litigation—including incurring "attorneys' fees, costs and punitive damages"—was by completing the following tasks by "no later than 5:00 p.m. on January 27, 2023":

1. Confirm that they returned all KMG Confidential Information;

2. Identify each KMG client and/or employee that Mr. Tadlock contacted since leaving KMG;

3. Cancel any contracts, agreements, or business relationships with any current or former KMG client, including Lindy's, and withdraw any outstanding proposals to any such client;

4. Immediately cease and desist from interfering with or soliciting KMG clients and/or employees; and

5. Agree to compensate KMG for the loss of income on the Lindy's account.

*Id.*

2

KMG did not take legal action by the end of the week as the letter promised. In fact, KMG did nothing for the next *four weeks*. Finally, on February 15 KMG's attorney prepared a summons and complaint accusing only Mr. Tadlock—and not Dark Horse—of breach of contract and tortious interference. *See id.* at pp. 30–40. The summons and complaint were personally served on Mr. Tadlock in Arkansas on February 16. *See id.* at pp. 19–22. However, KMG did not immediately file the summons, complaint, or proof of service; pay a filing fee; or receive a case number and judge assignment.

Under Minnesota's procedural rules, KMG was permitted to "commence" its lawsuit without filing the summons and complaint in court. *See* Minn. R. Civ. P. 3.01. A Minnesota state-court plaintiff is only required to serve the defendant with a copy of the summons and complaint, and the defendant is only required to serve his answer on the plaintiff. *See* Minn. R. Civ. P. 12.01. Thereafter, the parties may proceed with discovery under the rules. They may end up resolving the case on their own without filing a single document in court, paying any filing fees, or receiving a case number. The only requirement the state of Minnesota imposes on litigants with respect to filing is that it be accomplished within a year of the date the complaint is served on the defendant—"unless the parties within that year sign a stipulation to extend the filing period." *See* Minn. R. Civ. P. 5.04(a). The effect of these rules is that parties who are embroiled in a legal dispute in Minnesota may litigate their case without filing it for a year—or more—and the state court would be none the wiser.[1]

---

[1] The commencement date (i.e., the service date) under Minnesota Rule 3.01 only becomes important when a defendant raises a statute of limitations defense. The commencement date governs the calculation of the limitations period under Minnesota

3

On March 6, 2023, two and a half weeks after being served with KMG's unfiled Minnesota lawsuit, Mr. Tadlock filed a lawsuit in the Circuit Court of Washington County, Arkansas. His complaint sought a declaratory judgment that:

> (i) the Non-Solicitation Provision does not prevent him from providing services to former clients of KMG in the event his representation of this [sic] clients is unsolicited and (ii) Tadlock need not return proprietary, trade secret, or otherwise confidential information that is in his possession at the request and direction of his clients.

(Doc. 3, p. 6, ¶ 29). KMG was served with the Arkansas suit on March 7 at 2:00 p.m. *Id.* at p. 14. That same day at 4:25 p.m., KMG paid its filing fee to the District Court of Hennepin County, Minnesota, and filed a slightly amended version of the complaint it served on Mr. Tadlock on February 16.[2] Both state court cases were removed to their respective federal courts: the Minnesota case to the U.S. District Court for the District of Minnesota on March 17, and the Arkansas case to this Court on April 5.[3] In the Minnesota case, Mr. Tadlock has challenged the court's personal jurisdiction over him by filing a motion to dismiss. *See HEK, LLC, d/b/a Kinnberg Management Group, LLC v. Zack Tadlock*, Case No. 0:23-CV-658 (JRT/JFD) (D. Minn.), Doc. 9. That motion has been ripe since May 8, but the court has not yet ruled.

---

law, rather than the date the complaint is filed in court. *See, e.g., Larsen v. Mayo Med. Ctr.*, 218 F.3d 863, 867 (8th Cir. 2000).

[2] The Court takes judicial notice of the fact that the first entry on the Hennepin County District Court's docket is the amended complaint. This Court has compared the complaint that was served on Mr. Tadlock on February 16 to the amended complaint that was filed on March 7 and notes that they are identical except for a few factual additions and a new claim for breach of the duty of loyalty under Minnesota law. *See* Doc. 13, pp. 7, 9, 13.

[3] The parties agree that federal jurisdiction is proper because they are completely diverse and there is at least $75,000 in controversy.

In the instant case, KMG's Motion to Dismiss argues that the Minnesota lawsuit is entitled to priority under the first-to-file rule and this Court should either dismiss this case in favor of allowing the Minnesota one to proceed or, in the alternative, stay this case pending the outcome of the Minnesota lawsuit. Mr. Tadlock believes his Arkansas lawsuit was filed first. Neither party disputes the timeline of events set forth above.

## II. LEGAL STANDARD

The first-to-file rule is meant to prevent duplicative litigation and conflicting judgments, as well as to conserve judicial resources. *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985). This discretionary rule "gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993). "The rule, however, yields to the interests of justice, and will not be applied where a court finds 'compelling circumstances' supporting its abrogation." *Id.* (quoting *United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488 (8th Cir. 1990)).

These "compelling circumstances" may be present when the first party to file: (1) did so in anticipation of the opposing party's lawsuit; (2) did so in bad faith; (3) filed an action for declaratory judgment; or (4) inappropriately raced to the courthouse after the other party gave notice of its intention to sue. *See Boatmen's First Nat'l Bank of Kansas City v. Kan. Pub. Emps. Ret. Sys.*, 57 F.3d 638, 641 (8th Cir. 1995).

## III. DISCUSSION

The case in this Court and the one pending in the District of Minnesota qualify as

"parallel litigation" under the first-to-file rule because they involve the same parties, same nucleus of fact, and same core legal issues—though KMG's suit accuses Mr. Tadlock of breaching his employment agreement and committing tortious interference, while Mr. Tadlock's suit seeks a declaratory judgment that he did nothing wrong.

The first issue the Court must resolve is which suit was filed first. The parties agree that KMG served the Minnesota lawsuit on Mr. Tadlock on February 16—but did not file it in court then; Mr. Tadlock filed the Arkansas lawsuit on March 6; and KMG filed the Minnesota lawsuit on March 7. KMG argues the Minnesota case should be considered "first filed" because, according to a peculiarity of Minnesota procedure, a lawsuit is "commenced" on the date of service, and this "commencement" date—rather than the date of filing—is when Minnesota first establishes jurisdiction over a dispute for purposes of determining priority. See Doc. 12, p. 5. For the reasons explained below, the Court rejects KMG's argument and finds that the first-to-file rule hinges on actual filing and not service.

Support for this position is found in the District of Minnesota's opinion in *Twin Cities Gaming Supplies, Inc. v. Fortunet, Inc.*, where the court grappled with "the interaction between the first-filed rule and [Minnesota's] procedural rule" concerning filing requirements. 2010 WL 391294, at * 2 (D. Minn. Jan 25, 2010). The plaintiff in *Twin Cities* served a Minnesota state-court summons and complaint on the defendant but did not file the complaint in court. *Id.* at *1. Eight days later, the defendant filed parallel litigation in Nevada state court. *Id.* Five days after that, the plaintiff filed the Minnesota state-court complaint and moved to enjoin the defendant from proceeding with the

6

Nevada lawsuit. *Id.* Both the Minnesota and Nevada cases were removed to their respective federal courts. *Id.* at *1. The plaintiff argued that even though the Minnesota complaint was filed after the Nevada complaint, the Minnesota case should be considered first-filed because it was "commenced"—or served—first. *Id.* at *2. The District of Minnesota rejected that argument and reasoned that Eighth Circuit precedent on the first-to-file rule indicates that a court's "jurisdiction" over a case—for purposes of determining priority in filing—refers to "a court's power to act" or "power to decide a case or issue a decree," which "does not attach unless and until an action has been filed with the court." *Id.* at *3 (relying on *Ill. Blower, Inc. v. Deltak, LLC*, 2004 WL 765187, at *1 (N.D. Ill. Apr. 7, 2004) and *Marietta Campbell Ins. Grp., LLC v. Jefferson-Pilot Life Ins. Co.*, 2007 WL 3197311, at *1 (D.N.D. Oct. 26, 2007)).

The District of Minnesota's reasoning is sound. When parallel litigation is proceeding in two states, it makes sense to conserve resources and avoid conflicting outcomes by litigating in the state where jurisdiction first attached—that is, the state where a court first had the power to act—and dismissing the later-filed lawsuit. In the case at bar, the Minnesota state court had no power to act or issue a decree until March 7, the date KMG filed its amended complaint of record. The Arkansas state court had the power to act on March 6, the date Mr. Tadlock filed suit. Though only a day separates the filing of the two lawsuits, the Court finds that Mr. Tadlock's suit was filed first.

Next, KMG argues in the alternative that the Court should ignore the fact that Mr. Tadlock filed first because compelling circumstances show he filed in bad faith, engaged in inappropriate forum shopping, and/or inappropriately raced to the courthouse after

7

KMG gave notice of its intention to sue. At first blush, Mr. Tadlock's decision to file for declaratory judgment *after* he was notified of the possibility of litigation and *after* being served with KMG's complaint may seem damning. However, those facts do not paint the complete picture of the situation Mr. Tadlock faced at the time he decided to file suit. The timeline is important.

KMG first threatened Mr. Tadlock with litigation in a letter dated January 20. The letter demanded that Mr. Tadlock terminate his current business relationship with KMG's former client, Lindy's Homemade, and "[a]gree to compensate KMG for the loss of income on the Lindy's account." (Doc. 13, p. 18). Unless Mr. Tadlock agreed to KMG's demands by January 27, KMG vowed it would "enforce its contractual, statutory and common law rights to the fullest extent permissible under the law." *Id.*

Mr. Tadlock remained in limbo for four weeks after receiving KMG's threatening letter. It was not until February 16 that Mr. Tadlock was served with a complaint—but under Minnesota's procedural rules, KMG was not required to pay a filing fee and commence formal litigation for up to a year and could instead proceed informally with the case—or not—at its pleasure.

Mr. Tadlock consulted with legal counsel and prepared his own declaratory judgment action against KMG. Importantly, he held off on filing it for another two and a half weeks. In view of these facts, Mr. Tadlock's decision to put an end to uncertainty and file for declaratory judgment on March 6 raises no red flags. *See Verizon Commc'ns, Inc. v. Inverizon Int'l, Inc.*, 295 F.3d 870, 874–75 (8th Cir. 2002) (finding that the plaintiff did not "rush to the court house" or engage in improper forum shopping or

"anticipatory filing" when it waited approximately six weeks after receiving a cease-and-desist letter to file for declaratory judgment).

## IV. CONCLUSION

For the reasons explained above, KMG's Motion to Dismiss, or in the alternative, Motion to Stay Proceedings (Doc. 11) is **DENIED**. In the parallel litigation taking place in both this Court and in the District of Minnesota, it is this Court's view that the Arkansas case was the first to be filed.

**IT IS SO ORDERED** on this 27th day of June, 2023.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE